**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **M.H.,** ***an individual*****,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:22-cv-3258** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **RED ROOF INNS, INC.,** ***et al.*****,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter comes before this Court on Third-Party Defendant Securitas Security Services USA, Inc.'s Motion to Dismiss Defendant/Third-Party Plaintiff Red Roof Inns, Inc.'s Third-Party Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, Securitas's Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. Plaintiff M.H., proceeding anonymously, sued Defendants Red Roof Inns, Inc. ("RRI") and Red Roof Franchising, LLC on August 26, 2022. (Compl., ECF No. 1 ¶¶ 1, 13–14). She alleges that she was the victim of sex trafficking at a Red Roof Inn hotel in Phoenix, Arizona, from August 26–29, 2012, and that there were "abundant 'red flags'" to alert the Defendants about her trafficking. (*Id.* ¶¶ 13, 91–92, 96). Specifically, hotel personnel observed that: M.H. was afraid, anxious, and nervous; she and others in her party checked in without identification; she avoided eye contact and showed signs of physical abuse, distress, and injury; her trafficker was monitoring her movements; her clothing was noticeable and inappropriate; her trafficker was older than her and reserved multiple rooms with cash or a pre-loaded card; individuals arrived at the

hotel and visited M.H.'s room at odd hours without using the main hotel entrance; a "Do Not Disturb" sign was constantly used for the room; the room smelled of bodily fluids and musk, noticeable from the public hallway; the room had excessive amounts of cash, alcohol, drugs, sex paraphernalia, and condoms, as well as multiple computers, cell phones, pagers, and credit card swipers, all visible from the public hallway; there were individuals loitering in the hallways who appeared to be monitoring the vicinity of M.H.'s room; and at least one individual was soliciting male patrons at the hotel. (*Id.* ¶ 96). Thus, the "employees of the Phoenix Red Roof Inn" allegedly observed and "facilitated" M.H.'s trafficking; according to M.H., "[t]he Red Roof employees and their associates who were on the premises . . . knew [her] traffickers and assisted, supported, and facilitated their trafficking venture." (*Id.* ¶¶ 96, 112). Eventually, M.H.'s trafficker was convicted of human trafficking under 18 U.S.C. § 1591. (*Id.* ¶ 105).

On July 21, 2025, RRI brought a third-party complaint against Securitas Security Services USA, Inc. pursuant to Federal Rule of Civil Procedure 14(a)(1). RRI asserted that Securitas "may be liable . . . for all or part of the claim" that M.H. brought against it under a Security Services Agreement. (ECF No. 80 ¶ 3). Although RRI denied all liability for M.H.'s allegations, it explained that "Securitas was contracted to and did provide security services at the Phoenix" hotel in question from June 2008 until September 2012. (*Id.* ¶¶ 17, 19, 21). Based on the Security Services Agreement, RRI asserts four causes of action against Securitas: (1) contractual indemnification and defense; (2) common-law indemnification; (3) contribution; and (4) breach of contract for Securitas's failure to defend and indemnify RRI from M.H.'s allegations. (ECF No. 80 ¶¶ 27–50).

On September 5, 2025, Securitas moved to dismiss each cause of action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

(ECF No. 88). RRI responded in opposition, (ECF No. 91), and Securitas replied, (ECF No. 92). This matter is ripe for review.

## II. STANDARD OF REVIEW

### A. Impleader

Impleader, also known as third-party practice, "permit[s] additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). Federal Rule of Civil Procedure 14 governs, providing that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a non-party who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).

"Any party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). "Although Rule 14(a) has never expressly provided for a motion to dismiss third-party claims, the federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them." 6 Wright & Miller's Federal Practice and Procedure § 1460 (3d ed. 2026). Accordingly, courts apply the standard of review for motions to dismiss under Federal Rule of Civil Procedure 12(b). *E.g.*, *A.W. v. Best W. Int'l, Inc.*, 2024 WL 1340264, at *1 (S.D. Ohio Mar. 29, 2024) (Marbley, J.).

### B. Motion to Dismiss

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the complaint, and permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the complaint's cause

of action, and is "not a challenge to [its] factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, in evaluating a Rule 12(b)(6) motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [its] favor." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks and citation omitted). This favorable treatment of the complaint applies to well-pleaded factual allegations. Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In sum, the facts alleged must be sufficient to "raise a right to relief above the speculative level," such that the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Beyond the complaint itself, courts may also consider exhibits attached to the complaint, "public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

## III. LAW & ANALYSIS

Securitas moves to dismiss all four counts in RRI's Third-Party Complaint, arguing that the common law indemnity and contribution claims fail as a matter of law under the TVPRA, and that the contractual indemnity and breach of contractual indemnity claims fail because Ohio law prohibits RRI for seeking indemnification post-agreement for criminal or illegal acts. Before analyzing these claims, this Court reviews the contract between Securitas and RRI, which

delineates what was expected of Securitas. The parties agree that their contract is governed by Ohio law. (ECF Nos. 88 at 7; 91 at 3 n.1).

### A. Security Services Agreement

The "Security Services Agreement" between RRI and Securitas set forth Securitas's duties and obligations, including the required protocols and training that its security guards would need for Red Roof Inn hotels covered by the contract. Securitas would be responsible for ensuring that the Phoenix Red Roof Inn had adequate security. Under the terms of the contract, Securitas was to:

> [F]urnish . . . a security guard service consisting of one (1) properly trained security guard(s), or more as may be agreed upon . . . to use its best efforts to reasonably limit the risks of security-related hazards to the personal safety and property of [RRI's] guests, employees, and invitees, and to the employees of [Securitas].

(ECF No. 80-1 § 3). Securitas and its guards would also "abide by the instructions contained in 'Red Roof Inns Security Officer Directives.'" (*Id.*). Under those directives, Securitas security guards were generally mandated to "gather facts concerning any incident" and "leave explanations to the proper authorities." (ECF No. 80-1 Ex. B.). They were also required to "us[e] force as reasonably necessary to protect a guest or employee." (*Id.*). Separately, Securitas security guards were to follow particular security procedures. These protocols included patrolling the property each hour, ensuring each guest room was secured, preventing guests from making excessive noise, investigating suspicious persons on the property, questioning drivers who repeatedly toured the lot, listening for unusual sounds, observing guests as they left their vehicles and entered the hotel, and contacting local law enforcement for assistance if needed. (*Id.*). Securitas also certified that any security guard would be "appropriately trained to work in an inn environment." (ECF No. 80-1 § 5(a)(i)). Securitas would be responsible for supervising its security guards, and "limiting, to the extent reasonably possible, the likelihood that guests, invitees, or inn employees could be

injured." (*Id.* §§ 3, 7). The security guards were expected to work closely with hotel employees in connection with their duties. They would carry a two-way radio "to ensure that instant communication" could be maintained with front desk employees. (*Id.* § 6).

The Security Services Agreement also delineated how Securitas would indemnify RRI for certain liabilities arising from covered Red Roof Inn hotels. Securitas would "assume[] full responsibility and liability for any injury to any person . . . caused by, resulting from, or arising out of any act or omission on the part of [Securitas], its employees or agents in connection with [Securitas's] performance" under the contract. (*Id.* § 11.1). Securitas was to:

> [D]efend, protect, indemnify, and hold [RRI] harmless from and against any liability, loss, cost, threat, suit, demand, claim, and expense including, but not limited to, reasonable attorney's fees, investigative fees and court costs for damages to property or person which may arise out of or in connection with [the Security Services] Agreement (each a 'Claim'), but only to the extent that any such Claims are caused by the negligent acts, negligent omissions, willful misconduct, or other fault . . . of [Securitas], its employees or agents while acting within the scope of their duties and authority in connection with its or their performance under this Agreement, which such indemnity shall survive termination of this Agreement. . . .

(*Id.* § 11.2).

With these contractual provisions in mind, this Court turns to Securitas's motion to dismiss the four causes of action.

**B. Common Law Indemnity and Contribution (Counts II and III)**

First, Securitas argues that RRI's claims for common law indemnity and contribution must be dismissed because such claims are not permitted under the TVPRA. In doing so, Securitas points to this Court's prior decisions in its related hotel sex trafficking cases, arguing that their analysis holds. (ECF No. 88 at 5–7).

Securitas is correct that this Court has repeatedly rejected attempts by hotel defendants to bring contribution and indemnification claims—typically against hotel franchisees—in related cases. In doing so, this Court has reasoned:

> (1) [T]he statute does not expressly provide a cause of action for contribution or indemnification; (2) hotel chains are not among those the TVPRA seeks to benefit; and (3) Congress has amended the statute at least seven times and repeatedly declined to include an explicit right to contribution or indemnification.

*A.S. v. Red Roof Inns, Inc.*, 2024 WL 5245123, at *2 (S.D. Ohio Dec. 30, 2024) (Marbley, J.) (first citing *A.W.*, 2024 WL 1340264, at *2, then citing *T.P. v. Best W. Int'l, Inc.*, 2024 WL 1347451, at *2 (S.D. Ohio Mar. 29, 2024) (Marbley, J.)) (internal quotation marks omitted). Nothing has occurred since these prior decisions necessitating a change in course now: Congress has not amended the civil remedy provision, and so the statute remains silent on indemnification and contribution. *See* 18 U.S.C. § 1595. Hotels are not trafficking victims, and not part of the class that the Trafficking Victims Protection Reauthorization Act is designed to protect. The statutory text, structure, purpose, and legislative history all confirm this understanding, *see A.W.*, 2024 WL 1340264, at *2, so this Court's answer to the "ultimate question" of "whether Congress intended to create the private remed[ies]" to indemnification and contribution has not changed. *Nw. Airlines, Inc. v. Transp. Workers*, 451 U.S. 77, 91 (1981). The TVPRA does not sanction indemnification or contribution.

While RRI characterizes these claims as arising under the common law, that does not salvage them. First, claims for common-law indemnification are effectively claims for contribution, because "without a contractual basis for indemnification, the . . . 'claim is merely an equitable one, and as such, it is a claim for total contribution.'" *A.W.*, 2024 WL 1340264, at *2 (quoting *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1497 n.10 (S.D. Ohio 1991) (Kinneary, J.)). And "[t]here is no general federal right to contribution." *Paroline v. United States*, 572 U.S. 434, 455 (2014). Rather, "'a federal contribution action is virtually always a creature of a specific statutory regime.'" *A.W.*, 2024 WL 1340264, at *2 (quoting *Guam v. United States*, 593 U.S. 310, 316 (2021)). Where, as here, a contribution claim "does not implicate 'uniquely federal

interests,' . . . courts are not obligated to effectuate it by creating federal common law." *Id.* (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641–42 (1981)).

To its credit, RRI initially did not hide from this Court's prior decisions. It expressly acknowledged *A.S.* in its Third-Party Complaint, indicating that despite that ruling, it would "continue[] to assert claims for common-law indemnification and contribution" because the Sixth Circuit had not addressed the issue and because other district courts have ruled differently. (ECF No. 80 at 6 n.1). Then, in its opposition, RRI recast its theory and attempted to differentiate the issues here from those decided in *A.S.*, suggesting that this Court dismissed the analogous *A.S.* claims "on federal common law grounds," "maintain[ing] . . . that Ohio [law] governs RRI's rights and obligations pursuant to the choice of law provision" in the Security Services Agreement, and arguing that because "Ohio law permits common law indemnification and contribution claims," RRI should be permitted to proceed under those state-law theories. (ECF No. 91 at 4).

Securitas simply replied that RRI's argument ignores this Court's precedent, which mandates dismissal of these common law indemnification and contribution claims. (ECF No. 92 at 1–2). This arguably misses the distinction RRI was attempting to draw between contribution and indemnification arising under Ohio law versus federal common law.

Even if Securitas missed the distinction RRI was attempting to draw, it is of no moment in this case. *A.S.*'s *ratio decidendi* did not deal only with federal claims. In *A.S.*, this Court considered and ultimately rejected arguments that Ohio law, including Ohio Rev. Code § 2307.25(A), should govern and permit third-party common-law indemnification and contribution claims to go forward. *A.S.*, 2024 WL 5245123, at *3. It explained that while the Red Roof defendants argued that their "rights and obligations [were] governed by Ohio law," they "provide[d] no reason why [*A.S.*] differ[ed] from *A.W.* and *T.P.* so as to warrant departure from

those rulings," and concluded that the logic of *A.W.* and *T.P.* still applied under a state-law theory. *Id.*

To be sure, RRI now points to several cases where district courts have reached the opposite conclusion. *E.g.*, *C.D. v. Red Roof Inns, Inc.*, 2024 WL 5339456, at *6 (N.D. Ga. July 15, 2024) (declining to strike or dismiss third-party indemnification claims under common-law and contract theories prior to discovery); *A.B. v. Marriott Int'l, Inc.*, 2020 WL 3642485, at *2–5 (E.D. Pa. July 6, 2020) (permitting third-party complaint for indemnification and contribution against traffickers). RRI also points to a Kentucky case for the proposition that "an indemnification claim need not arise from the same cause of action asserted by the initial plaintiff." *L.H. v. Red Roof Inn, Inc.*, 2025 WL 714385, at *13 (W.D. Ky. Mar. 5, 2025).[1] But *L.H.* is not necessarily counter to this Court's precedent—indeed, *L.H.* expressly adopted this Court's analysis that federal common law indemnification and contribution claims were foreclosed. *Id.* at *10. And insofar as *L.H.* suggested that indemnification claims could arise out of separate causes of action, that court was interpreting and applying Kentucky law. *Id.* at *13 (quoting *Raytheon Co. v. Ahtna Support & Training Servs., LLC*, 2023 WL 5439778, at *5 (W.D. Ky. Aug. 23, 2023) (applying Kentucky law)). RRI has not shown that the same holds true under Ohio law. Although it is undeniably true that "district courts . . . have reached differing conclusions" on these issues, *C.D.*, 2024 WL 5339456, at *6, RRI does not explain why this Court should deviate from its precedent. "It is not sufficient for a party to mention [an] argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted). Absent argument that is more developed, this Court will not stray from its settled

[1] RRI cites a September 5, 2023 opinion of that court, (*see* ECF No. 91 at 4), but that earlier opinion does not appear to include the quoted language or address indemnification or contribution. *See L.H. v. Red Roof Inn, Inc.*, 2023 WL 5725574 (W.D. Ky. Sept. 5, 2023).

approach to this issue. *See A.S.*, 2024 WL 5245123, at *2, *A.W.*, 2024 WL 1340264, at *2, *T.P.*, 2024 WL 1347451, at *2; *see also G.M. v. Choice Hotels Int'l, Inc.*, 2025 WL 18760, at *2–3 (S.D. Ohio Jan. 2, 2025) (Marbley, J.); *H.S. v. Red Roof Inns, Inc.*, 2025 WL 18761, at *2–3 (S.D. Ohio Jan. 2, 2025) (Marbley, J.); *J.B. v. Red Roof Inns, Inc.*, 2025 WL 50899, at *2–3 (S.D. Ohio Jan. 8, 2025) (Marbley, J.); *N.B. v. Red Roof Inns, Inc.*, 2025 WL 50876, at *2–3 (S.D. Ohio Jan. 8, 2025) (Marbley, J.).

But even if these issues were not already well-settled by this Court's prior related decisions, RRI's Third-Party Complaint appears deficient from a notice-pleading standpoint to the extent RRI construes it to plead claims for relief distinct from what this Court considered in *A.S.* The Third-Party Complaint conceded that its common-law indemnification and contribution claims were considered and rejected in *A.S.* RRI suggested that it continued to raise such claims because the Sixth Circuit had not yet decided them. (ECF No. 80 at 6 n.1).

Pleadings "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *A.R. v. Wyndham Hotels & Resorts, Inc.*, 2022 WL 17741054, at *11 (S.D. Ohio Dec. 16, 2022) (Marbley, J.) (quoting *Bell Atl. Corp.*, 550 U.S. at 545); *see* Fed. R. Civ. P. 8(a)(2). Given that the Third-Party Complaint indicated that its common-law indemnification and contribution claims were akin to the ones evaluated in *A.S.*, RRI cannot use its opposition brief as a vehicle, in effect, to amend or clarify what it already pleaded. In evaluating the motion to dismiss, this Court "must focus only on the allegations in the pleadings," *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020), and not on the opposing party's attempts to recast or reframe the substance of their pleadings in their response papers. *See id.* RRI "cannot 'amend [its] complaint in an opposition brief or ask the court to consider new allegations not contained in the complaint.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir.

2020) (quoting *Bates*, 958 F.3d at 483) (parenthetical omitted). RRI's Third-Party Complaint must be construed as asserting the same type of common-law indemnification and contribution claims considered and rejected in *A.S.*

Accordingly, Counts II and III in the Third-Party Complaint are dismissed.

**C. Contractual Claims (Counts I and IV)**

Next, Securitas argues that RRI's contractual claims for indemnity and breach must be dismissed, because under Ohio law, RRI cannot enter into an agreement indemnifying future illegal or criminal acts. (ECF No. 88 at 7–10). Under Securitas's reading of the civil liability provision of the TVPRA, 18 U.S.C. § 1595, "the only way RRI can be found liable to M.H. under the TVPRA is if M.H. was criminally trafficked at RRI's hotel and RRI knowingly benefitted from *participating in that criminal trafficking venture*." (*Id.* at 8–9) (emphasis in original).

Not so. As RRI correctly points out, (ECF No. 91 at 5–7), Securitas has conflated the TVPRA's standard for criminal liability, 18 U.S.C. § 1591(a), with the TVPRA's civil remedy provision, 18 U.S.C. § 1595(a). The TVPRA criminalizes the following offense:

> (a) Whoever knowingly—
>
> > (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> >
> > (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Separately, the TVPRA allows victims to recover damages against not only the perpetrators, but against those who knowingly benefitted from ventures that they either knew or should have known were in violation of the statute. This civil remedy subsection provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). As this Court has previously explained, it is sufficient for a plaintiff to allege that defendants "'participated in a venture' under § 1595" because defendants "rented rooms to people [they] knew or should have known [were] engaged in sex trafficking." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) (Marbley, J.).

Securitas raises two arguments to the contrary. First, Securitas challenges whether it can be held contractually responsible for any injuries to M.H. that arose out of an alleged venture between the hotel and the trafficker. But "'participation' under § 1595 does not require actual knowledge of participation in the sex trafficking itself," and "liability under § 1595 can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in the sex trafficking." *Id.* at 970; *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (quoting *M.A.* and holding that a venture under the civil liability provision need not be a sex trafficking venture); *compare A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1268–70 (11th Cir. 2026) (distinguishing *G.G.*, finding that participation in a venture requires "'something more' than an arms-length transaction," but noting that "nothing in the plain language of § 1595(a) requires that the 'venture' be a 'sex trafficking venture'"). The rental of a hotel room can constitute a financial benefit from a relationship with an alleged trafficker sufficient to establish the requirement that the hotel

knowingly benefitted financially from a venture in violation of the TVPRA. *See R.A. v. Best W. Int'l, Inc.*, 2024 WL 3759761, at *4 (S.D. Ohio Aug. 12, 2024) (Marbley, J.) (collecting cases). Here, M.H. has plausibly alleged that the Red Roof Defendants knew or should have known about her trafficking, including because hotel staff observed indicia of trafficking, looked the other way, and even facilitated her trafficking. (ECF No. 1 ¶¶ 96, 112). Such allegations, as detailed in M.H.'s pleading, are sufficient at this early stage of the case. *See R.A.*, 2024 WL 3759761, at *4.

Securitas also implies that RRI must have had actual knowledge of the alleged trafficking to be found liable under the TVPRA. But to be held civilly liable under the beneficiary theory, the question is what the hotel knew or should have known. Constructive knowledge is sufficient. The Red Roof Defendants "need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates." *Id.* Any other reading of the statute would render the "should have known" language "meaningless." *M.A.*, 425 F. Supp. 3d at 970. Moreover, constructive (or actual) knowledge need not encompass the particular underlying TVPRA violation with respect to M.H. "If Congress had meant in Section 1595 that the participant must have had actual or constructive knowledge of the specific victim, it could have simply said so. It did not." *G.G.*, 76 F.4th at 556; *accord A.G.*, 171 F.4th at 1270 ("[W]e do not agree with the . . . atextual requirement that beneficiaries must know the identify of the trafficking victim. It is obviously true that one may know of a TVPRA violation without knowing the identity of the victim."). Finally, Securitas relies on *R.A.* for the proposition that "'Section 1595 incorporates § 1591's criminal liability elements, which include actual knowledge, as opposed to constructive knowledge.'" (ECF No. 88 at 8 (quoting *R.A.*, 2024 WL 3759761, at *6). This selective quotation is inapt, because it relies upon *R.A.*'s analysis of a *perpetrator*-liability theory, not a *beneficiary*-liability theory.

To summarize, a civil defendant might not violate 18 U.S.C. § 1591(a) but still can be held liable under the beneficiary theory of the civil provision of 18 U.S.C. § 1595(a). This Court has repeatedly held that hotel defendants *can* bring third-party claims for contractual indemnification in related TVPRA cases brought by plaintiffs under a beneficiary theory of civil liability. *E.g.*, *T.P.*, 2024 WL 1347451, at *3–4 ("Given that, here, there is an express right to indemnification created by [Defendant's] contract with its franchisee . . . the grounds to allow impleader here are [strong]."); *accord A.S.*, 2024 WL 5245123, at *3–4. Securitas's failure to address the entirety of this Court's prior cases is a glaring omission in its motion to dismiss, (*see* ECF No. 92), and its position is untenable.

In conclusion, dismissal of the contractual causes of action is not warranted at this juncture. To be sure, M.H. has alleged serious wrongdoing against hotel staff, claiming that the "Red Roof employees and their associates" at the hotel "engaged in affirmative, unlawful conduct" because they maintained "a relationship with [M.H.]'s trafficker." (ECF No. 1 ¶ 112). These allegations conceivably implicate Securitas's on-site security guards. It is certainly possible that Securitas's security guards were the individuals who allegedly facilitated M.H.'s trafficking. It is difficult to see how Securitas could have been complying with the Security Services Agreement—which required security guards to patrol the property every hour, check to ensure each guest room was secured, investigate loiterers, suspicious persons, and excessive noise, and keep tabs on hotel guests—and yet fail to discover the alleged trafficking of M.H. over multiple days.

Securitas's Motion to Dismiss is denied with respect to Counts I and IV in the Third-Party Complaint.

## IV. CONCLUSION

For the foregoing reasons, Third-Party Defendant Securitas Security Services USA, Inc.'s Motion to Dismiss (ECF No. 88) is **GRANTED in part** and **DENIED in part**. Defendant/Third-Party Plaintiff Red Roof Inns, Inc. may proceed with its Third-Party Complaint against Securitas under Counts I and IV for contractual indemnification and breach of contract. Counts II and III for common law indemnification and contribution are **DISMISSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 14, 2026**